UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-62309-BLOOM

DAVID STIFF,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Petitioner David Stiff's ("Petitioner") Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. ECF No. [6] ("Amended Motion"). The Government filed a Response to the Amended Motion, ECF No. [8] ("Response"), with supporting exhibits, ECF Nos. [8-1, 8-2]. Petitioner filed a Reply, ECF No. [13] ("Reply"), with a supporting exhibit, ECF No. [13-1].

The Court has carefully considered the Amended Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Amended Motion is denied.

### I. BACKGROUND

Petitioner, who is presently incarcerated at Jesup Federal Correctional Institution, asks the Court to vacate, set aside, or correct his sentence in Case No. 18-cr-60089. *See generally* ECF No. [6]. The Court construes Petitioner's Amended Motion liberally due to his *pro se* status. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

***The Offense Conduct and Trial.*** Petitioner was charged by indictment with one count of possession of child pornography involving a prepubescent minor, in violation of 18 U.S.C. §§

2252(a)(4)(B) and (b)(2). CR-ECF No. [1].[1] The Eleventh Circuit previously summarized the background offense conduct and trial as follows:

> Agent Elliot Heath Graves, a member of the Federal Bureau of Investigation's ("FBI") Crimes Against Children Unit in Miami, Florida, was working as an online undercover agent when he identified an internet IP address that had been used to share child pornography. The pornography was shared from a computer at that IP address using Ares, a peer-to-peer network. Graves obtained a search warrant for the residence associated with that IP address. Pursuant to the warrant, the FBI searched the home of Janet Mount, who lived with her son, daughter-in-law, and three grandchildren in Sunrise, Florida. None of the electronic devices found at the home during the search revealed any evidence of child pornography.
> The FBI, after interviewing Mount, learned that: (1) Stiff had been living at Mount's residence on and off, (2) he had lived there during the time that the pornography had been shared, and (3) he had accessed the internet while there. The family also informed the FBI that Stiff, who was working as a truck driver, was on the road in Toughkenamon, Pennsylvania. Based on this information, the agents contacted the FBI in the Philadelphia area where Stiff was located. FBI agents from a satellite office near Toughkenamon then obtained a search warrant for Stiff's truck and his person. The FBI agents located Stiff at a warehouse and executed the search warrant. In their search of Stiff's truck, the FBI agents found a computer; an external hard drive; a Wi-Fi hotspot device; an SD card, which is an electronic storage device; multiple thumb drives; and two cell phones.
>
> Stiff was transported by the FBI agents to a local police station two and a half miles away, and his truck was towed. He was wearing shorts and it was 20 degrees Fahrenheit outside. FBI agent Jennifer Morrow questioned Stiff in the police station for over two and a half hours; this interview was recorded. Before beginning the interview, Morrow told Stiff that he was not under arrest, he was free to leave, and he did not have to speak to her. She also told him that the interview was being recorded. Morrow also told Stiff that he could not "have any of [his] items back until the search is completed" and that "until the truck is released to [him], there's not much [he] can do."
>
> Morrow explained to Stiff that the search warrant was issued in response to an investigation regarding child pornography. She explained that Stiff's electronic devices would be searched pursuant to the search warrant. During the interview with Morrow, Stiff admitted that child pornography would be found on his electronic devices, he had obtained the images from Ares, and he had planned to delete the images in question because he "wanted to stop." Morrow told Stiff that law enforcement's immediate concern resulted from the discovery that there were young children in Mount's residence where the pornography had been downloaded, stating, "you see why we're here?" Stiff confirmed that he understood and told

---

[1] References to docket entries in Petitioner's criminal case, No. 18-cr-60089, are denoted as "CR-ECF No."

> Morrow that he cared about the children and would never have done anything to harm them. After stating that Stiff would be free to leave, he could return to his trucking routes, and he would be receiving his property back, Morrow wrapped up the interview and told Stiff to check in with her in a couple of days with his new cell phone information.
>
> For close to a year, Stiff checked in regularly with the FBI, first staying in contact with Morrow and then with Graves. Graves felt that an experienced interviewer was needed to interview Stiff to determine whether Stiff had done anything inappropriate with Mount's granddaughter, who had been living in the residence while he lived there. As a result, a second interview occurred in Miami almost 10 months after the search had been executed. This interview was not recorded, but Graves observed it. According to Graves's recollection, Stiff admitted after being given *Miranda* warnings that he downloaded and watched child pornography while he was living at Mount's residence. Stiff also mentioned that Mount's granddaughter would occasionally sleep with him and Mount in the bed but declared that nothing inappropriate occurred. Stiff was asked in the interview if he had ever received any viruses on his computer as a result of downloading pornography; he replied that he had not.
>
> A few months after the interview, Graves contacted Stiff and informed him that he was going to be arrested and should turn himself in. Graves stated that because of Stiff's cooperation, he would recommend the least charge. In this call, Stiff mentioned for the first time that his computer had been hacked and that he was under the impression the FBI knew that a hacker—not Stiff—had downloaded the child pornography. The FBI was unable to find evidence of hacking on Stiff's electronic devices.

*United States v. Stiff*, 795 F. App'x 685, 686-87 (11th Cir. 2019) (citing CR-ECF No. [60] at 138, 152, 195; internal citations and footnote call numbers omitted). At the conclusion of the 3-day trial, the jury found Petitioner guilty as charged. CR-ECF No. [62] at 154-55; CR-ECF No. [31]. At sentencing, Petitioner was sentenced to a 110 months' imprisonment followed by five years of supervised release. CR-ECF No. [63] at 10-11.

***Appeal and Post-conviction Proceedings***. Petitioner filed a counseled appeal raising two issues: (1) the district court erred when it admitted into evidence Petitioner's videotaped statement obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966); and (2) the district court erred when it denied his motions for mistral based on the Government's references to other crimes not charged and irrelevant conduct. *See Stiff*, 795 F. App'x at 685-86. On November 15, 2019, the

Eleventh Circuit issued a written opinion affirming the conviction. *Id.* at 692.

***The § 2255 Proceedings***. Petitioner timely[2] filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. *See* ECF No. [1]. Prior to issuance of the Order to Show Cause, *see* ECF No. [7], Petitioner filed a proper Amended Motion. ECF No. [6]; *see* Fed. R. Civ. P. 15(a). The Government filed a Response and exhibits arguing that the Petitioner was not entitled to relief. ECF Nos. [8, 8-1, 8-2]. Petitioner filed a Reply and an exhibit. ECF Nos. [13, 13-1].

## II. LEGAL STANDARD

***Section 2255 Motions***. "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a) (alteration added). Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under § 2255 are extremely limited. *See United States v. Frady*, 456 U.S. 152, 165 (1982). A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum sentence authorized by law; or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *see also McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011) (citation omitted). "[R]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned,

---

[2] "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations and internal quotation marks omitted).

result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)).

***Ineffective Assistance of Counsel***. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 & 694 (1984); *see also Harrington v. Richter*, 562 U.S. 86, 104 (2011). To satisfy the prejudice prong, a petitioner must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694; *see also Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). If a petitioner fails to establish one of the prongs under *Strickland*, the Court need not address the remaining prong. *See Strickland*, 466 U.S. at 697.

A petitioner bears the burden of proof in habeas proceedings. *See Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008). "'There is a strong presumption that counsel's performance was reasonable and adequate.' To overcome that presumption, 'a petitioner must establish that no competent counsel would have taken the action that his counsel did take.'" *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005); *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000)).

***Ineffective Assistance of Appellate Counsel***. *Strickland* "governs a claim of ineffective assistance of appellate counsel." *Overstreet v. Warden*, 811 F.3d 1283, 1287 (11th Cir. 2016) (citation omitted). "Under *Strickland*, a petitioner must show (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced the petitioner's defense." *Id.* (citing *Strickland*, 466 U.S. at 687).

"Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments." *Id.* (citation omitted). "Generally, only when ignored

issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)); *see also Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) ("Declining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." (citation omitted)). "In most cases, an unpreserved trial error will not be a plainly stronger ground for appeal than preserved errors." *Davis*, 137 S. Ct. at 2067.

"A petitioner satisfies the prejudice prong upon showing that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [appeal] would have been different.'" *Overstreet*, 811 F.3d at 1287 (quoting *Strickland*, 466 U.S. at 694); *see also Ferrell v. Hall*, 640 F.3d 1199, 1236 (11th Cir. 2011) (stating that to prove prejudice, petitioner alleging appellate ineffectiveness must show that "the outcome of the appeal would have been different" (citations omitted)).

## III. DISCUSSION

Liberally construing the Amended Motion, Petitioner raises two ineffective assistance of trial claims (Claims 1 and 5), one ineffective assistance of appellate counsel claim (Claim 7), and three interrelated claims that the Government withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (Claims 2, 3, and 4). ECF No. [6] at 4-16. Given the nearly identical arguments in support of Claims 2, 3, and 4, the Court considers those claims together.

### A. Claim One

In Claim One, Petitioner alleges that trial counsel was ineffective for failing to file a motion to suppress the audio/video recording from the January 23, 2017 interview between Petitioner and FBI Agent Jennifer Murrow. ECF No. [6] at 4. Petitioner argues that neither testimony about the contents of the interview nor the audio/video recording of the interview should have been admitted

6

into evidence because law enforcement officers failed to inform him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id.*

In order to succeed on a claim that trial counsel was ineffective for failing to file a motion to suppress, a petitioner must prove "(1) that counsel's representation fell below an objective standard of reasonableness, (2) that the [suppression] claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Zakrzewski v. McDonough,* 455 F.3d 1254, 1260 (11th Cir. 2006) (alteration added; citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

As to all three prongs, Petitioner has not met his burden. First, trial counsel's failure to file a suppression motion was not unreasonable. Petitioner's theory of defense at trial was that his computer had been hacked, that the hacker—not Petitioner—downloaded and played child pornography on his laptop, and that when Agent Murrow first interviewed Petitioner on January 23, 2017, the FBI did not arrest him because they were aware that there was a hacker operating his computer. CR-ECF No. [62] at 142-46. After the Government rested its case, the only evidence offered in support of Petitioner's theory of defense was his own testimony. *See id.* at 56-101.

Because Petitioner testified in his own defense at trial, even if trial counsel had suppressed Petitioner's statements from the first interview, Petitioner's statements would likely have been admissible as impeachment evidence. To the extent that Petitioner testified that he informed Agent Murrow about the hacker during the January 23, 2017 interview, evidence of Petitioner's prior inconsistent statements—the fact that he did not mention the hacker and instead admitted to possessing child pornography—would have been admissible.

It is well settled that a criminal defendant has a fundamental constitutional right to testify on his or her own behalf at trial. *See Rock v. Arkansas,* 483 U.S. 44, 49 (1987). The decision whether or not to testify in one's own defense belongs solely to the defendant. *See United States*

7

*v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) ("This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel."). At trial, the Court informed Petitioner of his absolute right to testify and confirmed that Petitioner came to the decision after consultation with trial counsel. *See* CR-ECF No. [62] at 53-54. Given Petitioner's election to testify, trial counsel's decision not to challenge the January 23, 2017 interview and to allow Petitioner to explain why he did not directly mention the hacker was reasonable. *See Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) ("In order to show that an attorney's strategic choice was unreasonable, a petitioner must establish that no competent counsel would have made such a choice.").

Second, Petitioner has not met his burden of proof that the suppression claim had merit. In *Miranda*, the Supreme Court "formulated a warning that must be given to suspects before they can be subjected to custodial interrogation." *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010). Following *Miranda*, "[a] suspect in custody must be advised as follows: He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id.* (alteration added; citation omitted).

"*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Cordera v. Sec'y, Fla. Dep't of Corr.*, 636 F. App'x 552, 555 (11th Cir. 2016) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). To determine whether a suspect is "in custody," courts look at the "circumstances surrounding the interrogation." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). In consideration of those circumstances, the test is an objective one: "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). The

8

"ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Cordera*, 636 F. App'x at 555 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).

After review of the record, the Court concludes the following circumstances surrounded the January 23, 2017 interview between Agent Murrow and Petitioner. That evening, Petitioner's truck was temporarily seized pursuant to a valid search warrant and towed to a truck depot in the Philadelphia area. CR-ECF No. [60] at 206. At the time the search warrant was executed, it was 20 degrees Fahrenheit and Petitioner was wearing shorts. *Id.* at 143. Petitioner voluntarily traveled two miles to a regional police department where Agent Murrow, in the company of another agent, interviewed Petitioner. *Id.* at 131. Agent Murrow informed Petitioner of the nature of the investigation and that the interview was being video and audio recorded. *Id.* at 132. Additionally, multiple times during the interview Agent Murrow explained to Petitioner that he was "not under arrest" and that he was "not going to be arrested [that night]." *Id.* at 137 (alteration added); *see id.* at 185 ("[B]ut you are free to leave and to continue doing your routes. And at this point in our investigation, we aren't notifying your employer. We aren't notifying your family. We aren't notifying anybody." (alteration added)); CR-ECF No. [62] at 76. Petitioner was also told that he could not have any of his items back until the search was completed. *Id.* at 138. Throughout the interview, Agent Murrow maintained a non-threatening demeanor. *See generally id.* at 159-202; *see id.* at 142 (offering Petitioner coffee); *id.* at 180 (giving Petitioner a break from questioning for several minutes).

In support of this claim, Petitioner states only that "[c]ounsel did not object to the testimony nor the video nor attempt[] to have them suppressed based on the Government['s] failure to observe Defendant's rights to Miranda." ECF No. [6] at 4 (alterations added). Petitioner's arguments are conclusory and wholly unsupported. *See Price v. Allen*, 679 F.3d 1315, 1325 (11th

9

Cir. 2012) (denying habeas relief based on ineffective assistance of counsel where the petitioner provided only conclusory assertions). Accordingly, as to the second prong, the record refutes Petitioner's claim and thus he cannot overcome his heavy burden.

Finally, even without Petitioner's statements from the first interview, there is overwhelming evidence supporting Petitioner's guilt. On several occasions during the summer of 2016, "online undercover" FBI Agent Heath Graves received child pornography originating from a computer with a specific Internet Protocol address ("IP address") belonging to Janet Mount. CR-ECF No. [60] at 92-99. A subsequent search of Mount's home and computer devices did not turn up any evidence of child pornography. *Id.* at 100-01. During the search, Agent Graves learned that Mount's friend, Petitioner, was a long-haul truck driver and sometimes stayed at her home for extended periods in between work trips. *Id.*; *see* CR-ECF No. [60] at 113-14. The dates of Petitioner's prior stay coincided with the date Agent Graves downloaded child pornography from a computer connected to Mount's IP address. *Id.*

After seizing Petitioner's laptop and cell phone pursuant to a valid search warrant, law enforcement officers discovered child pornography on both devices. CR-ECF No. [60] at 210-11, 228; CR-ECF No. [61] at 24-28, 50. A later forensic examination of the laptop did not reveal any evidence of hacking. CR-ECF No. [61] at 57. Furthermore, the FBI interviewed Petitioner a second time where he was advised of and properly waived his *Miranda* rights. CR-ECF No. [61] at 104. During the second interview, Petitioner admitted to downloading and watching child pornography. *Id.* at 105-06. Because Petitioner has not satisfied his burden on either the performance or prejudice prong of *Strickland*, he is not entitled to relief. Thus, Claim 1 is without merit.

### B. Claims Two, Three, and Four

In Claims Two, Three, and Four, Petitioner argues that the Government withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (Claim 2), the withheld evidence amounts

to "spoilation of evidence" (Claim 3), and the Government's actions in withholding the evidence "constitutes prosecutorial misconduct" (Claim 4). ECF No. [6] at 5, 7-8 (alteration added). In support of all three claims, Petitioner states that following the filing of the Government's appellate brief, he received the transcript of the video that was used as evidence at trial. *Id.* Petitioner reviewed the transcript and determined that "the first 23 minutes and 40 seconds of audio is missing." *Id.* Petitioner states that these claims were not raised on appeal because they are "based on newly discovered evidence." *Id.* at 6-9. The Government contends that all three claims are not based on newly discovered evidence. Thus, they are procedurally defaulted. The Court agrees.

The first 23 minutes and 40 seconds of audio from the January 23, 2017 interview between Agent Murrow and Petitioner is not newly discovered evidence. Petitioner received the transcript prior to preparing his appeal. In fact, the Government introduced the audio/video recording and the transcript into evidence at trial. CR-ECF No. [60] at 134; *see* ECF No. [8-2]. The jury was provided a copy of the transcript to assist them in following the content of the conversation as they listened to the recording. *Id.* Regarding the contested portion of audio, the transcript clearly states as follows:

> **[No Audio 00:00:00 – 00:23:40]**
>
> **[Background Noises 00:23:41 – 00:32:38]**

ECF No. [8-2] at 3 (emphasis in original). The next minute of the transcript consists of small talk between FBI Agent Joe Milligan and Petitioner about the carpal tunnel in his finger. *Id.* at 4. Then, there are six more minutes of "**No Conversation and Background Noises**" before Agent Morrow introduces herself to Petitioner and informs him of the nature of the investigation and that he is being recorded. *Id.* (emphasis in original).

Because the first 23 minutes and 40 seconds of audio from the interview do not constitute newly discovered evidence, Petitioner was required to raise any claim regarding that portion of

11

audio in his direct appeal. Because Petitioner raises the issues in Claims 2, 3, and 4 for the first time in this Amended Motion, Claims 2, 3, and 4 are procedurally defaulted.

A petitioner "can overcome [procedural default] if he establishes cause and prejudice." *United States v. Bane*, 948 F.3d 1290, 1294 (11th Cir. 2020) (alteration added; citation omitted). "Ineffective assistance of counsel may satisfy the cause exception to a procedural bar." *U.S. v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted). "Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (citations and internal quotations marks omitted). However, "[a]ttorney error that constitutes ineffective assistance of counsel is cause." *Id.* at 753-54 (1991) (alteration added); *see also Martinez v. Ryan*, 566 U.S. 1, 11 (2012) (citations omitted).

In his Reply, Petitioner insists that the copy he received at trial omitted page two of the transcript so the copies provided to the jury must also have omitted page two. ECF No. [13] at 9-10. He also argues, for the first time, that trial counsel was ineffective for failing to "identify and confront such a flagrant disregard by the Government for the integrity of the evidence." *Id.* at 10. However, Petitioner does not allege appellate counsel was ineffective for failing to raise the transcript issue on direct appeal. *See Holsey v. Warden*, 694 F.3d 1230, 1256 (11th Cir. 2012) (explaining that petitioners bear the burden of proof on ineffectiveness claims). In any event, Petitioner has not identified how the allegedly missing audio portion would have been exculpatory or favorable to him. Consequently, the Court will not grant relief based upon such barebones and conclusory allegations. *See Price*, 679 F.3d at 1325. Accordingly, Claims 2, 3, and 4 are without merit.

### C. Claim 5

In Claim 5, Petitioner alleges that trial counsel was ineffective for not adequately preparing for trial. ECF No. [6] at 10. In support, Petitioner lists five examples of trial counsel's ineffectiveness: (1) trial counsel failed to hire either an audio/video expert to examine his recorded statement or a computer expert to examine the "computer-related evidence"; (2) trial counsel failed to adequately communicate with Petitioner and spent only thirty minutes consulting with Petitioner in-person; (3) trial counsel failed to depose any of the Government witnesses and was thus unprepared to cross-examine them in order to capitalize on testimony favorable to the defense; (4) trial counsel failed to prepare Petitioner to testify on his own behalf; and (5) trial counsel failed to prepare a closing argument. *Id.*

To the extent that Petitioner intended to raise the five examples as separate claims of ineffective assistance of counsel, the claims are wholly conclusory. *See Price*, 679 F.3d at 1325. First, as to the claim that counsel failed to hire a computer expert, Petitioner does not allege what evidence a computer expert would have produced let alone whether any such evidence would have been exculpatory.

Second, Petitioner states that he and trial counsel only met in-person for a combined thirty minutes. Accepting this fact as true, Petitioner fails to explain with any specificity how this deficiency prejudiced him.

Third, Petitioner argues that trial counsel's failure to depose Government witnesses limited his ability to compel favorable testimony on cross-examination. Petitioner does not describe the substance of omitted exculpatory testimony nor does he point to any instances in the record where counsel failed to impeach Government witnesses.

Fourth, Petitioner alleges that "[c]ounsel made no effort to go over [Petitioner's] testimony prior to trial." *Id.* at 10. The record contradicts this claim. Prior to Petitioner's testimony, the Court had the following colloquy with Petitioner:

> THE COURT: [Petitioner], the Government carries the sole burden of proving all the elements of this offense. You have absolutely no burden. However, whether you choose to present any evidence or testimony, including your own testimony, while you can certainly consult with [counsel], in the end, the decision needs to be yours.
>
> [PETITIONER]: Yes, Your Honor.
>
> THE COURT: And have you, in fact, made that decision?
>
> [PETITIONER]: Yes, Your Honor.
>
> THE COURT: Will you be presenting any evidence or testimony?
>
> [PETITIONER]: Yes, Your Honor.
>
> THE COURT: All right. So [counsel], you will be calling witnesses in this case?
>
> [COUNSEL]: There are no witnesses. [Petitioner] wishes to testify, Your Honor. And that's his decision, so obviously I'll honor that decision.
>
> THE COURT: All right. Now, [Petitioner], you understand that you have no burden. As I stated, the Government carries the sole burden. But whether you choose to testify, certainly that is a decision that you need to make. You can consult with [counsel] but in the end the decision needs to be yours.
>
> Have you had a full opportunity to consult with [counsel] to make the decision as to whether you will be testifying in this trial?
>
> [PETITIONER]: Yes, Your Honor.
>
> THE COURT: And have you made that decision?
>
> [PETITIONER]: Yes, Your Honor.
>
> THE COURT: And what is that decision, sir?
>
> [PETITIONER]: I want to testify.

14

| | |
|---|---|
| THE COURT: | Has anyone forced you or threatened you to make that decision? |
| [PETITIONER]: | No, Your Honor. |
| THE COURT: | Has anyone made any promises or assurances to you to persuade you to testify in this case? |
| [PETITIONER]: | No, Your Honor. |
| THE COURT: | And have you had a sufficient time to have all of your questions answered before making that decision? |
| [PETITIONER]: | Yes, Your Honor. |

CR-ECF No. [62] at 53-54 (alterations added). On this record, Petitioner cannot show that trial counsel "made no effort" to prepare him to testify or that he suffered prejudice as a result of inadequate preparation.

Fifth, Petitioner states that trial counsel did not prepare a closing argument. To the contrary, the record reflects that trial counsel delivered a closing argument. CR-ECF No. [62] at 142-46. Additionally, following the Government's closing argument, trial counsel brought to the Court's attention that Petitioner "passed . . . a note indicating that he wishe[d] to . . . proceed pro se . . . and give his own closing argument." *Id.* at 139 (alterations added). The Court addressed Petitioner's concerns directly:

| | |
|---|---|
| THE COURT: | [Petitioner], you understand that you're represented by counsel. You've been represented by counsel throughout the trial. Now, certainly, [counsel] will be making the closing argument; however, what I might suggest, [counsel], is that if there are arguments that you would like [counsel] to make, the Court certainly will give [counsel] adequate time to not only confer with you beforehand, but before he concludes his closing argument, I'll certainly give him an opportunity to consult with you directly so that the arguments that you would like to have made can be made completely by [counsel], your attorney. All right, sir? |
| [PETITIONER]: | Okay. |

15

*Id.* (alterations). The Court then recessed to give trial counsel an "opportunity to speak directly to [Petitioner] so [counsel could] encompass all of the arguments that he would like to have made to the jury." *Id.* (alterations added). After recess, the Court ascertained from Petitioner that by making his request regarding closing arguments he did not intend to discharge counsel. *Id.* Trial counsel informed the Court that he had Petitioner's "closing argument, and [he was] prepared to give it." *Id.* (alteration added). The Court then confirmed with Petitioner that he approved of trial counsel proceeding with closing arguments:

| | |
|---|---|
| THE COURT: | [Petitioner], have you now had a sufficient opportunity to speak with [trial counsel]? |
| [PETITIONER]: | Yes. |
| THE COURT: | And are you satisfied at this point that [trial counsel] will proceed with making the closing argument on your behalf? |
| [PETITIONER]: | Yes, ma'am. |

*Id.* at 142 (alterations added). On this record, Petitioner cannot show that trial counsel did not prepare a closing argument.

With regard to each of the five allegations, Petitioner fails to meet his burden of proof as to either the deficient performance or prejudice prongs of the *Strickland* analysis. Accordingly, Claim 5 is without merit.

### D. Claim 6

In Claim 6, Petitioner alleges that trial counsel was ineffective for failing to object to deficient jury instructions. ECF No. [6] at 12. Petitioner states that his case involved "unique circumstances that the standard jury instructions did not address." *Id.* Because the jury was not instructed on the "unique circumstances," jurors did not have "the opportunity to determine the veracity of the defense's arguments." Trial counsel's failure to object or otherwise attempt to correct this "deficiency" was prejudicial. *Id.*

16

Petitioner's claim is conclusory. Petitioner does not explain why the jury instructions were inappropriate or identify the "unique circumstances" that should have been addressed in the jury instructions. Nor does he allege that if properly instructed, there is a reasonable probability he would have been acquitted. The Court will not construct an argument for a *pro se* petitioner. *See Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1296 (11th Cir. 2015) (stating that even with liberal construction of *pro se* petitions, courts "will not infer a claim out of thin air")). Accordingly, Claim 6 is without merit. *See Price*, 679 F.3d at 1325.

### E. Claim 7

In Claim 7, Petitioner alleges that appellate counsel was ineffective for failing to include two issues in the appellate brief. ECF No. [6] at 14. Petitioner states that he had one thirty-minute phone call with appellate counsel prior to the filing of the appellate brief. *Id.* During that conversation, "there were no less than four (4) issues identified that both parties agreed were appropriate for Direct Appeal." *Id.* However, the appellate brief only raised two issues. Appellate counsel never explained to Petitioner the reason for omitting two of the issues. *Id.* Additionally, regarding "the one issue that was considered by the [Eleventh Circuit]," Petitioner states that he had "valuable input that should have been presented in the reply, but [he] was not afforded the opportunity." *Id.* (alterations added).

Again, Petitioner's claim is conclusory. Petitioner does not identify the issues he alleges were omitted from the appellate brief nor does he explain in any detail his "valuable input" that should have been included in the reply brief. The Court will not construct an argument for a *pro se* petitioner. *See Landers*, 776 F.3d at 1296. Accordingly, Petitioner is not entitled to any relief based on such conclusory assertions. *See Price*, 679 F.3d at 1325.

## IV. EVIDENTIARY HEARING

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (alteration added); *see also Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016). Here, the issues presented can be resolved based on the record before the Court. Indeed, because the Court can "adequately assess [Petitioner's] claim[s] without further factual development[,]" Petitioner is not entitled to an evidentiary hearing. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003) (alterations added).

## V. CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal; rather, in order to do so, they must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where the district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when the district court rejects a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Petitioner fails to make "a substantial showing of the denial of a

18

constitutional right." 28 U.S.C. § 2253(c)(2). Upon consideration of the record, the Court concludes that no certificate of appealability shall issue.

## VI. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner David Stiff's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, **ECF No. [6]**, is **DENIED**.

2. No certificate of appealability shall issue.

3. To the extent not otherwise disposed of, any pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

4. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 7, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

David Stiff
#18504-104
Jesup Federal Correctional Institution
Inmate Mail/Parcels
2680 301 South
Jesup, GA 31599
PRO SE